In the Matter of Dorothy Wilkerson
JONES, Respondent.

No. 86–802.

District of Columbia Court of Appeals.

Submitted Aug. 21, 1986.
Decided Sept. 4, 1986.*

Before NEBEKER, MACK and
ROGERS, Associate Judges.

## ORDER

On this disciplinary case, respondent is
charged with engaging in conduct preju-
dicial to the administration of justice, ne-
glecting a legal matter, and failure to main-
tain complete client records. The Board on
Professional Responsibility has recom-
mended that the respondent be disciplined
by means of a public censure. Respondent
has not contested the Board's recommenda-
tion.

We conclude that respondent has violated
Disciplinary Rules DR 1–102(A)(5) (conduct
prejudicial to the administration of justice),
DR 6–101(A)(3) (neglect of legal matter),
and DR 9–103(B)(3) (failure to maintain
complete client records). We also agree
with the Board's recommendation of public

censure, as set forth more fully in the
Board's Report and Recommendation ap-
pended hereto and incorporated by refer-
ence. Accordingly, it is

ORDERED by the court that respondent
Dorothy Wilkerson Jones, be, and she here-
by is, publicly censured.

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Docket No. 403–84

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This case was submitted to the Board on
Professional Responsibility without oral ar-
gument or briefs after Hearing Committee
Number Eight found Respondent had vio-
lated four provisions of the Code of Profes-
sional Responsibility. Specifically, the
Hearing Committee found that Respondent
had violated Disciplinary Rule 1–102(A)(5)
by engaging in conduct prejudicial to the
administration of justice; Disciplinary Rule
6–101(A)(3) by neglecting a legal matter
entrusted to her; Disciplinary Rule 9–
103(B)(3) in that she did not maintain com-
plete client records within her possession
and to also account to that client; and
finally Disciplinary Rule 1–102(A)(4) for en-
gaging in conduct involving dishonesty.

In reviewing the record, the Board finds
substantial evidence to support the Find-
ings of Fact and Conclusions of Law of the
Hearing Committee on all counts with ex-
ception of the violation of Disciplinary Rule
1–102(A)(4). There is insufficient evidence
to support the count involving dishonesty,
and thus we decline to adopt the Hearing
Committee's Findings and Conclusions to
that extent.

Lastly, the Hearing Committee—in view
of the four code violations they found—rec-
ommended a suspension of a year and a
day. Upon reviewing the evidence here
and previous sanctions of our appellate

---

* The order in this case was entered on September
4, 1986. It is being published pursuant to this
court's order granting the motion of the Board
on Professional Responsibility for publication.

court in comparable cases, we recommend to the District of Columbia Court of Appeals that Respondent receive a public censure. The Board has reached these conclusions after considering the information and precedents that follow.

## I. FINDINGS

Respondent was appointed by the Superior Court of the District of Columbia as the Temporary Conservator of the estate and person of Claire P. Chatham on October 15, 1981. Mrs. Chatham, a widow, was over seventy years of age and living alone at the time. After a Report and Recommendation of a Guardian Ad Litem Respondent was appointed by Court Order of December 17, 1981 to be the Permanent Conservator. While Mrs. Chatham had an adult daughter living in the metropolitan area, the Court empowered Respondent to handle all the financial affairs of Mrs. Chatham.[1] An Inventory Report was due to be filed by Respondent on November 15, 1981. That Report was not filed by Respondent. She also failed to file an accounting on February 17, 1982. Each report is required by Rule 305(a) of the Superior Court of the District of Columbia Rules of Civil Procedure. Both accounting reports were still unfiled when the Court on June 10, 1982, issued a Notice of Summary Hearing on the question of Respondent's removal for failure to file the required reports. When the hearing came on before the Court on July 1, 1982, Respondent did not appear and was in fact removed by Court Order dated July 6, 1982.

In the same July Order, Nathan I. Silver was appointed Successor Conservator. The Court additionally referred the matter to the Auditor-Master to state the account on behalf of Respondent and to report its findings and recommendations to the Court. Respondent turned over to Mr. Silver in a nonexpeditious manner several documents including the checking account for Mrs. Chatham.

The Auditor-Masters' Report filed on July 25, 1984, detailed the assets of Mrs. Chatham and found a shortage of $2,209.89. This amount consisted of $2,188.57 in disallowed checks (most made out to cash) and two missing dividend checks for $9.84 and $11.48. No documentation was submitted by Respondent for the checks made out to cash, although she maintained that each merely reimbursed Mrs. Chathman's housekeeper for expended shopping funds and/or compensated a gentleman for working on the lawn of Mrs. Chatham's house. Included in the sum of $2,188.57 also was a check for $94.00 made payable to Mid-Town T.V. This amount, again without documentation, was disallowed by the Auditor-Master.

The housekeeper did not testify before the Hearing Committee and Respondent testified that she could not locate the appropriate receipts. In connection with the dividend checks, Respondent testified that Mrs. Chatham's mail had been kept in disorderly fashion before her appointment. (Tr. 64–65). The Auditor-Master requested judgment be entered against Respondent for $2,209.89 and further asked for a fee of $400.00 to be assessed for the work performed by its office. Judge Carlisle Pratt of the Superior Court agreed, and by Order of September 24, 1984 approved the Report of the Auditor-Master and entered judgment against Respondent (and her bonding company) for $2,209.89 and costs of $400.00.

Bar Counsel began his inquiry to Respondent in November, 1984.[2] Respondent re-

---

1. The subsequent Report of the Auditor-Master determined that the estate of Mrs. Chatham was worth slightly over $240,000. The assets consisted primarily of Money Market Certificates, savings and checking accounts in several institutions, stocks, and Social Security and Civil Service benefits. She also held title to two properties in the Northwest section of the city. Respondent did immediately take charge of a checking account—one source of the problems in this case.

2. There is some confusion throughout as to the proper addresses, both home and office, of Respondent. Bar Counsel initially sent notices to Tewkesbury Street instead of Tewkesbury Place, which is Respondent's actual home address. Respondent described to the Hearing Committee several office address changes. This situation was complicated by the Auditor-Master sending at least one notice to the improper office address. However, in each instance where a violation of the Code has been found,

plied by mailgram on January 29, 1985. Thereafter she did not respond to the inquiries of Bar Counsel. (Tr. 50–53). The Petition was filed in July 1985 and the Hearing Committee received testimony on September 26, 1985. Respondent participated in the hearing and testified.

## II. VIOLATIONS OF THE CODE

The Hearing Committee had a two-pronged basis for their conclusion that Respondent had violated Disciplinary Rule 1–102(A)(5) charging that she engaged in conduct prejudicial to the administration of justice. They found she had failed to cooperate with the Auditor-Master and failed to respond to the legitimate written inquiries of Bar Counsel. The first basis is not, in our view, supported by substantial evidence; the second is admitted by Respondent in her testimony. (Tr. 50). Respondent testified that she had never received the Notice from the Court for the Summary Hearing on July 1, 1982, on her potential removal as Conservator. (Tr. 48). Further, she gave the Hearing Committee information that she moved her office address from 6402 Georgia Avenue, N.W., to 6400 Georgia Avenue, N.W., to 5910½ Georgia Avenue, N.W., and finally to 2700 Georgia Avenue, N.W. (Tr. 38–39). There were no specific dates asked or given for these office moves in the testimony before the Hearing Committee.

Following her removal by the Court, the Auditor-Master was authorized by Court Order to complete the accounting that Respondent had failed to perform. In this process at least one meeting of counsel was set in September 1982. Respondent arrived late for this meeting (Tr. 39) and the Hearing Committee concluded that, in effect, she did not appear at all. H.Comm. Rpt. p. 7. It is apparent, however, from the testimony of John W. Follin, the Auditor-Master, that Respondent did appear at his office on this occasion, albeit late, and produced some of the documents he required. (Tr. 21). Therefore, failure of Respondent to cooperate with the Auditor-

the potential difficulty of notice to Respondent is not an issue as the evidence clearly demon-

Master during the development of the accounting is not supported by the record.

The Auditor-Master when acting under Orders from the Court stands as a judicial representative with the legal powers of the Superior Court. *In re Washington,* 489 A.2d 452, 460 (D.C.1985). As such, its requirements should not be taken lightly by the Bar. The removal of Respondent as Conservator also did not relieve her of the obligation of responding to the requests of the Auditor-Master. Although the failure of any member of the Bar to comply with requests or orders of the Auditor-Master is fully covered by Disciplinary Rule 1–102(A)(5), the alleged violation in this case is not supported by substantial evidence. Respondent has been far from the model of cooperation, but evidence does show she turned over to the Successor Conservator the material she possessed (Tr. 32) and did provide the Auditor-Master with what documentation she could locate (Tr. 39).

There is, on the other hand, a long line of cases which unequivocally holds that the failure of a member of our Bar to respond to Bar Counsel's legitimate written inquiries is a violation of Disciplinary Rule 1–102(A)(5). *In re Haupt,* 444 A.2d 317 (D.C.1982); *In re Lieber,* 442 A.2d 153 (D.C.1982); *In re Whitlock,* 441 A.2d 989 (D.C.1982); *In re Russell,* 424 A.2d 1087 (D.C.1980); *In re Willcher,* 404 A.2d 185 (D.C.1979). Respondent, as we said, has admitted that she knew about the charges in January 1985 (Tr. 50) and did not respond to Bar Counsel's correspondence. (Tr. 47).

With respect to the violation of Disciplinary Rule 6–101(A)(3) charging neglect of a legal matter, there is no question that Respondent did not file the required reports (Tr. 47). Rule 305(a) and (e) of the Superior Court Rules of Civil Procedure. The development of and filing of the accountings was required of Respondent in the course of her duties, and thus she failed to carry out one of her core fiduciary functions. *In re Banks,* 461 A.2d 1038, 1039–1040 (D.C.1983).

strates that Ms. Jones received actual notice of the proceedings against her.

Rules 301, *et seq.*, of the Superior Court of the District of Columbia Rules of Civil Procedure require the maintenance of records by a court-appointed fiduciary. Every expenditure must be substantiated. The disallowed checks here were mostly made out to cash, alleged by Respondent to be for reimbursement to the housekeeper. Some of the checks were to compensate a gentleman who cleaned the grounds of the house. Finally there was a check written allegedly for the purchase of a television.

In her testimony before the Hearing Committee, Respondent admitted that she could not present the proper documentation for these disputed disbursements, as required by her fiduciary position (Tr. 44). She offered that some of the documents might have been lost in the several moves of her office. She went on to suggest that she would submit this information to the Court and the Auditor-Master when located (Tr. 44–45). She had not done so as of the hearing date. Respondent has not, when required, accounted for the funds with which she was entrusted. *In re Burka,* 423 A.2d 181, 182–83 (D.C.1980). Respondent has violated Disciplinary Rule 9–103(B)(3).

We cannot, however, sustain the finding of the Hearing Committee that Respondent violated Disciplinary Rule 1–102(A)(4); there is not substantial evidence to support an allegation that she engaged in conduct involving dishonesty. The bulk of the money judgment issued against Respondent by the Superior Court was for disallowed expenditures. While this amount consisted primarily of checks made out to cash, there is no finding of misappropriation by the Auditor-Master (Tr. 25–26). The Hearing Committee also found that Respondent was attentive to the needs of Mrs. Chatham.

Bar Counsel presented no evidence that the funds obtained from the checks made out to cash were not applied to Mrs. Chatham's use. *See* H.Comm.Rpt. p. 11. Instead, the Hearing Committee has determined that because Respondent cannot affirmatively show what has been done with the funds, she must be subject to a finding

of dishonesty. H.Comm.Rpt. p. 11. We cannot agree. The burden of proving the charges rests with Bar Counsel. *In re Thorup,* 432 A.2d 1221 (D.C.1981); *In re Williams,* 464 A.2d 115 (D.C.1983). The Hearing Committee relies upon *In re Grant,* 89 Ill.2d 247, 60 Ill.Dec. 462, 465–66, 433 N.E.2d 259, 262–63 (1982), for the proposition that a technical conversion due to sloppy bookkeeping substantiates this violation. However, there is no showing that Respondent converted the funds from the checks to her own use.

The Hearing Committee also relies upon *In re Minninberg,* 485 A.2d 149, 150–51 (D.C.1984). This reliance again presents problems in the present factual context. In the *Minninberg* case the respondent used or converted collateral money, previously assigned, for his own use. The situation before the Board is inapposite. While we agree that Respondent had a legal and ethical duty to account for every penny belonging to Mrs. Chatham, Respondent cannot, under these facts, be found to have violated DR 1–102(A)(4) without something more than a bare showing that she failed to submit adequate documentation to support the expenditures.

### III. RECOMMENDATION FOR SANCTIONS

The Hearing Committee has recommended Respondent be suspended for a year and a day. It has done so by comparing the present case with *In re (Hazel P.) Tucker,* M 13–75/S 56–78 (D.C.Ct.App. Nov. 13, 1978). Ms. Tucker received rent monies for a twelve year period as attorney for and the administratrix of an estate. The Court was never informed of the existence of these assets. In *Tucker,* the respondent was found to have neglected a legal matter by failing to file reports and engaging in conduct prejudicial to the administration of justice when she did not respond to Bar Counsel's questions. However, the twelve year period of concealing assets from the Court is a factor not present here and is, in the opinion of the Board, a distinction with a difference. Respondent's period of neglect in this case was terminated by fairly prompt action by the Court. This shorter period of neglect

does not fully mitigate the neglect by Ms. Jones but is to be considered. In the *Tucker* case there were intentional actions by the respondent of hiding assets; that element is not present in the case of Ms. Jones.

This is not to say that the present situation is not serious. Respondent accepted a fiduciary position, caring for the financial well-being of Ms. Chatham. When Respondent accepted the position of Conservator, she was simultaneously obligated to comply with the full range of duties of the position.

Here, we find the appropriate sanction for Ms. Jones to be a public censure. This result is supported by at least two prior decisions in this jurisdiction. *In re Banks*, 461 A.2d 1038 (D.C.1983), involved an attorney who failed to file appropriate motions and responsive pleadings for a group of clients challenging a will, after he had filed suit to initiate the proceedings. The respondent in that case was found in five separate instances to have neglected legal matters entrusted to him. The neglect was found to be "unaggravated but essentially unmitigated." *Id.* at 1042. *Banks* also had received two prior informal admonitions. The other Code violations in the present case were absent in *Banks* but the five separate occasions of neglect in *Banks* rival the three different violations of the Disciplinary Rules by Ms. Jones.

*In re Gilchrist*, 488 A.2d 1354 (D.C. 1985), concerned violations of Disciplinary Rule 9–103(A)(2) by the commingling of a client's funds and of Disciplinary Rule 9–103(B)(3) by the failure to maintain proper records of the client's funds. When our Court of Appeals reviewed the recommendation for public censure in the *Gilchrist* case, it was mindful that a number of commingling cases have resulted in the disbarment. *In re Burka, supra,* or suspension for a year and a day. *In re Harrison,* 461 A.2d 1034 (D.C.1983). Yet in *Gilchrist* the Court agreed with the recommended public censure because there was no evidence of misappropriation of the client's funds. Here there is a failure of Respondent to file the appropriate reports and to document the expenditure of the ward's funds. But, there is no evidence of misappropriation.

We make the recommendation of a public censure knowing of the two prior informal admonitions received by Respondent, each of which generally involves the assistance of an attorney, a nonmember of the District of Columbia Bar, in the unauthorized practice of law in this jurisdiction. Each situation which resulted in an informal admonition is unrelated in character to the violations before us.

We regard the question of the appropriate sanction in this case as a difficult one. The vulnerability of the ward and the failure of Respondent to fulfill the fiduciary responsibilities she knowingly accepted are very troubling aspects. These factors were not present in the *Banks* and the *Gilchrist* cases upon which we rely. Accordingly, we have given serious consideration to recommending a period of suspension. However, the failures of Respondent which we have previously detailed do not fall to the level of conduct involving dishonesty or deceit. In addition we do not agree with the conclusion of the Hearing Committee that Respondent presented no mitigating evidence. While evidence of mitigation was not neatly presented after the tentative finding of a disciplinary violation by the Hearing Committee, the record as a whole in this case does disclose the payment by Respondent before the hearing of the judgment ordered by the Superior Court for $2,209.89 plus the $400.00 for the costs of the Auditor-Master (Tr. 44). In this case, there was no conversion, and prompt payment of the judgment may produce the net effect of a possible benefit to, rather than a loss suffered by, Mrs. Chatham. While this conduct might fall short of comprehensive mitigation, it is favorable material and should be considered. *In re Cope,* 455 A.2d 1357, 1361–62 (D.C.1983).

THEREFORE, the Board finds that Respondent has violated Disciplinary Rule 1–102(A)(5) through conduct prejudicial to the administration of justice; Disciplinary Rule 6–101(A)(3) for neglecting a legal matter entrusted to her; and Disciplinary Rule

9–103(B)(3) by failing to maintain complete records of her client's funds. The sanction recommended to the District of Columbia Court of Appeals is a public censure.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ Francis D. Carter
 FRANCIS D. CARTER

All members of the Board concur in this Report and Recommendation, except Ms. Keep who has filed a separate opinion dissenting as to the recommended sanction.

DATE: April 9, 1986.